IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MARGARET BARRON, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 09-1247 |
| | : | |
| QUEST DIAGNOSTICS, INC., | : | |
| Defendant | : | |

**MEMORANDUM**

**STENGEL, J.**                                                                      March 1, 2010

Margaret Barron worked for Quest Diagnostics from 2002 until she was fired in 2008. She claims Quest terminated her for using leave time to treat a serious medical condition and that this action violated the Family and Medical Leave Act. Quest has filed a motion for summary judgment. For the reasons set forth below, I will deny the motion.

**I. FACTUAL BACKGROUND**

Ms. Barron worked as a specimen technician for Quest Diagnostics starting in 2002. Def.'s SUF ¶ 1.[1] Her shift generally ran from 2:00 a.m. until 10:30 a.m. Def.'s Ex. Tab C, Barron Dep., 21. Starting as early as 2003, her performance evaluations noted that she had problems arriving for work on time. See Barron Dep. 75, 77, 87, 88, 92, 95. She received a Corrective Counseling Action ("CCA") on March 26, 2008, identifying

---

[1] Quest's statement of facts is referenced where the parties do not dispute the truth of the fact asserted. When a fact is in dispute, the record or the plaintiff's statement of facts is referenced.

nine times in March of 2008 she was more than ten minutes late to work, in violation of Quest's personnel policies. Def.'s SUF ¶¶ 4, 6. She received similar reports in July and August of 2008 identifying fourteen days in June and five days in July on which she was more than ten minutes late. Id. ¶ 8. The August CCA stated: "Final warning - Written: Failure to correct this deficiency or follow Company policies and/or procedures may result in further corrective action, up to and including termination, unless waived by management in some extreme circumstance(s)." Id. ¶ 9. Mrs. Barron was late eight times during August of 2008. Id. ¶ 10.

On August 28, 2008, Heather McNeill, a Human Resources Representative, sent Ms. Barron's supervisor, Scott Nicholls, an email indicating that she would be speaking to Ms. Barron about her absences but that she would "not be proceeding as of yet" in terminating Ms. Barron. Id. ¶ 11. Ms. McNeill met with Ms. Barron on September 3, 2008, and warned her that more latenessess would result in termination. Id. ¶ 12; Barron Dep. 122-23. Ms. Barron was then late six times in September of 2008. Def.'s SUF ¶ 13.

Ms. McNeill stated in a declaration submitted for this litigation that she, Mr. Nicholls, and Mr. Nicholls' supervisor, Susan Mills, agreed during a meeting on September 30, 2008, "that Ms. Barron should be terminated for her latenesses subject to obtaining approval from [Ms. McNeil's supervisor, Debra Mcghee]." Def.'s Ex. Tab A, McNeil Decl. ¶ 7. However, during Ms. Barron's Unemployment Compensation Appeal Hearing, Ms. McNeil stated that she and Mr. Nicholls made the decision to terminate Ms.

Barron. Unemployment Compensation Hearing Tr., 7. Mr. Nicholls testified that at the September 30, 2008, meeting, he, Ms. McNeill and Ms. Mills discussed Ms. Barron's attendance issues. Def.'s Ex. Tab B, Nicholls Dep. 66-68. He stated, although he was "in favor" of terminating Ms. Barron, he did not leave the meeting with the impression that she would be fired the next day; rather, he understood that they would be making "a recommendation" subject to approval from Quest's human resources department. Id.

Ms. Barron missed work on October 9, 10, 11, and 14, 2008 due to asthmatic bronchitis. Def.'s SUF ¶ 28; Pl.'s SUF ¶ 38. She cancelled a doctor's appointment scheduled for Thursday, October 9, 2008 because she was too ill to travel, and went to the emergency room for treatment on Sunday, October 12, 2008. Barron Dep. 148-50. On each day she missed work, she called Quest and spoke to shift "leads" to report that she was sick and would be absent. Def.'s SUF ¶ 28. During these conversations, the leads commented they could hear in her voice that she was sick and that she sounded "awful." Barron Dep. 145, 147. Ms. Barron informed Quest representatives on the evening of October 14, 2008 or the morning of October 15, 2008 that she was still sick, that she had a doctor's note explaining her absences and that she would "shoot for the end of the week," i.e., Friday October 16, 2008 or Saturday October 17, 2008, to return to work. Pl.'s SUF ¶ 28; Barron Dep. 181.

Ms. Barron missed her shifts on October 15, 16, and 17, 2008, due to her continued illness, and returned to work on October 18. Unemployment Compensation

Hearing Tr., 13.  She did not call in sick on two or three of those days, but explained that she thought she had it "covered when [she] called in on [October] 14" and said she would be missing more days.  Barron Dep. 64.  Erna Kolvik, a Benefits Specialist for Quest, indicated that Quest's call log shows that Ms. Barron called and left a message on October 16, 2008 and that Ms. Kolvik returned her call on October 17.  Def.'s Ex. Tab X, Kolvik Decl. ¶¶ 2-3.  Ms. Barron testified that she called Ms. Kolvik to discuss leave for a knee replacement surgery she planned to have in the future.  Barron Dep. 190.  She testified that she did speak with Ms. Kolvik on October 16, 2008.  Id. at 192-93.

On Tuesday, October 14, 2008, Ms. McNeill sent Mr. Nicholls an email stating, "Debra and I talked it over . . . [m]y recommendation is that we move forward with terminating [Ms. Barron].  I will be in the office on Friday . . . so if you can put the documentation together and [sic] let's plan to meet with her then."  Def.'s Ex. Tab R.  Both Mr. Nicholls and his supervisor, Ms. Mills, testified that the decision to terminate Ms. Barron was based solely on her latenesses in the months before October.  Def.'s Ex. Tab J, Mills Decl. at ¶ 4; Def.'s Ex. Tab. B, Nicholls Dep. at 16.  Mr. Nicholls testified that on October 16, 2008, after the decision was made to fire Ms. Barron, he discovered that there were no entries on October 15 or 16, 2008 for Ms. Barron in Quest's attendance book.  Def.'s SUF ¶ 19.  He learned that no one had taken a call from her regarding these absences, so he considered them to be "no show/no call" days.  Nicholls Dep. 70-71.  Mr. Nicholls and Ms. Mills both stated that because Ms. Barron failed to call on October 15

and 16, 2008, they decided to add these incidents as additional support for her termination, which had originally been based solely on her lateness. Mills Decl. at ¶ 4; Nicholls Dep. at 15-16.

Mr. Nicholls, Ms. Mills, and Ms. McNeill prepared a CCA dated October 21, 2008, stating that Ms. Barron was terminated. Def.'s SUF ¶ 25. On the morning of October 21, Mr. Nicholls and Ms. McNeill met with Ms. Barron in Ms. McNeill's office, and informed her that she had been terminated. Id. ¶ 26.

Ms. Barron filed her complaint against Quest on March 23, 2009, alleging one count of violating the FMLA. Discovery closed on September 15, 2009. Quest filed a motion for summary judgment on October 15, 2009 and Ms. Barron filed her response on November 13, 2009.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" when a reasonable jury could return a verdict for the non-moving party based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it could affect the outcome of the case under the governing law. Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing "based on the affidavits or by depositions and admissions on file" that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir.1992).

The court must view the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252. If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact,

then the court may not credit the moving party's version of events against the opponent, even if the quantity of the moving party's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

In her complaint, Ms. Barron asserts four separate causes of action under the FMLA. She claims that Quest (1) interfered with her FMLA rights by failing to provide her with particularized notice of her rights under the FMLA after it was advised that she had an FMLA qualifying condition; (2) interfered with her rights under the FMLA by failing to reinstate her to her former position upon completion of FMLA leave; (3) retaliated against her for exercising her rights under the FMLA by terminating her; (4) retaliated against her for previous FMLA-qualifying absences. Pl.'s Compl. ¶ 25-28. Quest argues that summary judgment should be granted in its favor because Ms. Barron cannot prove her FMLA claims for either interference or retaliation.

Congress enacted the FMLA in 1993 to accommodate the important societal interest in assisting families by establishing a minimum labor standard for leave. Among Congress' stated purposes for the Act are to (1) balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity; and (2) entitle employees to take reasonable leave for medical reasons. Sommer v. Vanguard Group, 461 F.3d 397, 398-99 (3d Cir. 2006). The FMLA endeavors to accomplish these purposes "in a manner

that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3).

The FMLA contains two relatively distinct types of provisions. First, it creates a series of prescriptive substantive rights for eligible employees, often referred to as the "entitlement" or "interference" provisions, which set floors for employer conduct. See Churchill v. Star Enters., 183 F.3d 184, 192 (3d Cir. 1999). Eligible employees "shall be entitled to a total of twelve workweeks of leave during any twelve-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

To assert an interference claim, the employee needs to show only that she was entitled to benefits under the FMLA and was denied them. 29 U.S.C. §§ 2612(a), 2614(a). The Act provides that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Under this theory, the employee need not show that she was treated differently than others. Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005). Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision. Id. at 119-120. An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA. Id.

### A.     Failure to Notify Claim

An employer's failure to advise an employee of her right to FMLA leave constitutes interference in violation of § 2615(a)(1). See Conoshenti v. Public Serv. Elec.

& Gas Co., 364 F.3d 135, 144-45 (3d Cir. 2004). Advisement of FMLA rights is necessary "to ensure that employers allow their employees to make informed decisions about leave" and to allow employees to plan their medical absence in such a way as to ensure protection under the FMLA. Id. at 144 (citing Nusbaum v. CB Richard Ellis, Inc., 171 F.Supp.2d 377, 379-80 (D.N.J. 2001)). A plaintiff asserting a failure to advise claim must also prove prejudice by showing that had she been properly informed of her FMLA rights, she could have structured her leave differently. Id. at 145-46; see also Capilli v. Whitesell Constr. Co., 271 Fed.Appx. 261, 267 (3d Cir. 2008).

I will grant Quest's motion as to Ms. Barron's failure to notify claim. Even assuming that Ms. Barron's calls to Quest informing them that she was sick and coughing were sufficient to notify them that she suffered from a serious medical condition that was covered under the FMLA, she has failed to show prejudice. Ms. Barron presents no evidence that she returned to work earlier than she would have had she been properly notified of a right to take FMLA leave, or that she could have structured the leave she did take differently. Ms. Barron took days off due to her asthmatic bronchitis until she was ready to return. Ms. Barron testified during her deposition that she called Quest's disability and leave services department to inquire about taking time off for knee replacement surgery in the future, and did not call to inquire about further leave for her bronchitis. Because there is simply no evidence that Ms. Barron was told to return prematurely or that she returned to work prematurely, no reasonable jury could conclude that she was prejudiced by any failure on the part of Quest to notify her of her rights

under the FMLA.

### B. Failure to Reinstate Claim

Upon return from a qualified absence, an employee is entitled to be restored to her former position or to an "equivalent position." 29 U.S.C. § 2614(a)(1); see also Sommer, 461 F.3d at 399. An employer's failure to reinstate an employee "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment" upon return from FMLA leave constitutes interference with that employee's FMLA rights. 29 U.S.C. § 2614(a)(1)(B); Sommer, 461 F.3d at 399. However, an employee's right to reinstatement is not absolute. "[T]he FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007); see also Conoshenti, 364 F.3d at 141 ("If an employee is discharged during or at the end of a protected leave, there is no right to reinstatement.")

I cannot find any substantive distinction between Ms. Barron's failure to reinstate interference claim and her retaliation claim, and, in her response to Quest's motion for summary judgment, she makes no effort to set one forth. Because this failure to reinstate claim is duplicative of her retaliation claim, it will be treated as a retaliation claim. In Conoshenti, the employee plaintiff claimed his taking leave was used by the employer as a negative factor in its decision to discharge the employee, and the Third Circuit treated this as a retaliation claim. See Conoshenti, 364 F.3d at 146-48.

Courts in this district have recognized that there is often confusion about whether a

plaintiff's FMLA claim is rightly characterized as an interference or a discrimination claim, especially when the plaintiff-employee is terminated following completion of FMLA leave. See Whitman v. Proconex, Inc., No. 08-2667, 2009 WL 141847 at *7 (E.D.Pa. Jan. 20, 2009) (citing Stallings v. Hussmann Corp., 447 F.3d 1041, 1051 (8th Cir. 2006)). In essence, the determination whether Quest has met its burden in showing that it would have terminated Ms. Barron even if she did not take FMLA leave would apply to both her failure to reinstate claim and her retaliation claim. See id. at n. 4 ("[T]he legitimate, nondiscriminatory reasons for termination that Defendant articulates under the McDonnell Douglas framework regarding the retaliation claim . . . can be viewed as an affirmative defense under the FMLA interference analysis."); see also Atchison v. Sears, --- F.Supp.2d ----, No. 08-3257, 2009 WL 3210063 at *7 (E.D.Pa. Oct. 9, 2009) ("[Plaintiff's] interference claim is identical to his retaliation claim, and premised on the same allegation that [Defendant] took adverse employment action against him because he requested FMLA leave. He cannot escape the McDonnell Douglas analysis to prove his case merely by affixing an "interference" label to one of his duplicative claims.); Mascioli v. Arby's Restaurant Group, Inc., 510 F. Supp. 2d 419, 433 (W.D.Pa. 2009) ("Since plaintiff's interference claim should be properly characterized as a retaliation claim, the interference claim will be denied as moot in light of the assertion by plaintiff of her retaliation claim."). Therefore, I will grant Quest's motion as to Ms. Barron's reinstatement claim because it is duplicated in her retaliation claim.

**C.  Retaliation Claim**

In its "discrimination" or "retaliation" provisions, the FMLA provides protection against discrimination based on the exercise of FMLA rights. 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave"). Employers may not "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c); see also Conoshenti 364 F.3d at147 n.9 (3d Cir. 2004).

### 1. Direct Evidence of Retaliation

When a plaintiff alleging termination presents direct evidence that her use of FMLA leave was "a substantial factor" in the decision to fire her, her claim is analyzed under the framework set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). See Conoshenti, 364 F.3d at147. When direct evidence is presented, "the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even it if had not considered the FMLA leave." Id. Direct evidence is evidence "sufficient to allow the jury to find that 'the decision makers placed substantial negative reliance on [the protected activity] in reaching their decision' to fire [the plaintiff]." Id. at 148 n. 10.

Ms. Barron claims she has provided sufficient direct evidence of retaliation for her claim to be evaluated under the Price Waterhouse framework. Whitman v. Proconex, 2009 WL 141847, is also instructive to this issue. There, the plaintiff was ostensibly fired because she received numerous customer complaints, but her employer also made statements concerning attendance issues that may have implicated her rights under the

FMLA. See Whitman, 2009 WL 141847 at *11. The court found that, although some of the employer's concerns had to do with the plaintiff's attendance, she had not produced sufficient direct evidence of retaliation because "[d]efendant's stated reason for terminating Plaintiff's employment—customer complaints—is well documented and many complaints did not correspond in time to any absence, FMLA-qualified or not." Id.[2]

The evidence Ms. Barron has presented does not constitute direct evidence of retaliation. Ms. Barron's lateness problems at Quest began as early as 2003. She consistently received CCA reports concerning her lateness, and admitted to attending meetings with Ms. McNeill in August and September of 2008 where Ms. McNeill informed Ms. Barron that if she did not address her timeliness issues she would lose her job. Barron Dep. 75, 77, 87, 88, 92, 95, 121-24. Quest has submitted evidence establishing that Ms. McNeill and Mr. Nicholls spoke about the possibility of terminating Ms. Barron for her lateness in August and September of 2008, and resolved at the end of September to recommend her termination. McNeill Decl. ¶ 7; Nicholls Dep. 66-68. Because Ms. Barron had an extensive history of lateness, and her supervisors had begun discussions about terminating her because of lateness before she commenced FMLA leave in October of 2008, Ms. Barron has not presented sufficient evidence that her supervisors relied substantially on her FMLA-related absences in deciding to terminate

---

[2] The Whitman court relied in this reasoning on the District of New Jersey decision in Tamayo v. Deloitte & Touche, LLP, No. 05-3364, 2007 WL 135975 (D.N.J. Jan. 16, 2007).

-13-

her.

## 2. Indirect Evidence of Retaliation

Because Ms. Barron has not presented direct evidence in support of her retaliation claim, it will be analyzed under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). See Atchinson, 2009 WL 3210063 at *8. To prove an FMLA retaliation claim with indirect evidence, a plaintiff must show that (1) she took an FMLA leave; (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to her leave. Id. If the plaintiff meets the prima facie burden, a rebuttable presumption of unlawful retaliation arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's termination. Marzano v. Computer Science Corp. Inc., 91 F.3d 497, 503 (3d Cir.1996) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).

I believe that Ms. Barron has stated a prima facie case. The parties do not dispute that she qualified for FMLA leave, and there is sufficient evidence to establish that she took FMLA leave. An employee seeking FMLA leave "shall provide the employer with not less than 30 days' notice, before the date the leave is to begin . . . except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B). "It is clear that an employee need not give his employer a formal written request for anticipated leave. Simple verbal notification is sufficient." Sarnowski, 510 F.3d at 402. The employee providing notice of anticipated leave must only provide her employer with "reasonably

adequate information under the circumstances to understand that the employee seeks leave under the FMLA." Id. Although Quest claims that "it is unclear how Barron intends to establish the she 'exercised her rights under the FMLA,'" there is evidence Ms. Barron gave sufficient notice of her illness to adequately inform Quest that she was taking FMLA-qualified leave. Ms. Barron called shift leads at Quest to inform them that she was severely ill and that she would be bringing a doctor's note confirming this when she returned. Because she was too sick to report to work or to attend her first scheduled doctor's appointment, and made this clear to the leads she spoke to when she called in sick, she provided reasonably adequate information for Quest to understand that she needed FMLA leave.

Ms. Barron clearly suffered an adverse employment action—her termination— following her return from leave. The only remaining question is whether she has established a causal connection between her exercise of FMLA rights and her termination. Ms. Barron claims that the temporal proximity between her leave and termination is sufficient to establish a prima facie case. The Third Circuit, while recognizing that "the mere fact that adverse employment action occurs after [a protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link," has also clarified that when the alleged retaliatory action is "unusually suggestive" of retaliatory motive, a causal link may be inferred. Reinhart v. Mineral Technologies, Inc., 2006 WL 4050695 at *11 (E.D. Pa. Nov. 27, 2006) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)). "When a plaintiff is relying

upon temporal proximity to satisfy her prima facie case for the purpose of summary judgment under McDonnell Douglas, close temporal proximity can, by itself, support a finding of causation. Id. at n. 10 (citing Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)).

Ms. Barron's leave began on October 9, 2008, and she returned to work on October 18, 2008. She took two scheduled days off on October 19 and 20, 2008, and returned to work as scheduled on October 21. She was fired on October 21, 2008. Because the time between Ms. Barron's return to work and her termination was so short—only one full work day, or three regular days—she has met her burden of proving a prima facie case of retaliation. This is true even though Quest has presented evidence that the recommendation to fire Ms. Barron was made before she began FMLA leave. See Champion v. Spencer Gifts, LLC, 2009 WL 3131461 at *6 (D.N.J. Sep. 24, 2009) (finding that temporal proximity was sufficient to establish a prima facie case because even though "the preliminary recommendation to terminate Plaintiff was made before he announced his intent to take FMLA leave . . . the final decision to terminate Plaintiff's employment was made while he was out on protected FMLA leave").

Because Ms. Barron has established a prima facie case of retaliation, the burden shifts to Quest to articulate a legitimate nondiscriminatory reason for her termination. Whitman, 2009 WL 141847 at *11. Quest has easily met this burden. It relies on Ms. Barron's continued lateness, citing specifically the warnings she received in August and September of 2008 that if she did not improve her timeliness in reporting to work, she

would be terminated.

Therefore, the burden shifts back to Ms. Barron to show that the nondiscriminatory reason Quest provided is a pretext for actual discrimination. Whitman, 2009 WL 141847 at *11. To show pretext, a plaintiff must present "some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perksie, 32 F.3d 759, 764 (3d Cir. 1994). "[T]o avoid summary judgment, the plaintiff's evidence . . . must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action." Id. (internal citations omitted). "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Id. (internal citations omitted).

Ms. Barron claims that summary judgment is inappropriate because a material question of fact remains whether her lateness was the primary motivation behind Quest's decision to terminate her. She argues that, although she was warned about lateness and could have been fired for this reason numerous instances before October 2008, Quest did not make the final decision to terminate her until she was on leave. This calls into

question whether her lateness was the motivating reason for her termination. She also cites inconsistencies in the testimony of Ms. McNeill, Ms. Nicholls, and Ms. Mills as to who made the final decision to terminate her. Finally, Ms. Barron notes the decision to terminate her was made after she notified her supervisor that she would need time off for knee surgery and while she was on leave because of her bronchitis.

I will therefore deny Quest's motion for summary judgment and allow Ms. Barron's retaliation claim to proceed. She is correct in arguing that her continued problems with lateness qualified her for termination months before she was actually terminated on October 21, 2008. Under Quest's personnel policies, an employee is subject to termination after four occasions of being over ten minutes late to work more than three times in a four week period. Def.'s SUF ¶ 4. Pursuant to this policy, Ms. Barron could have been terminated for her absences in March 2008, June 2008, July 2008, August 2008, and September 2008. Def.'s SUF ¶¶ 6, 8-10, 13. Quest argues that Ms. McNeill, Mr. Nicholls, and Ms. Mills made the decision to fire Ms. Barron during their September 30, 2008, meeting; however, a fact finder could conclude that they decided at that meeting to recommend her termination subject to approval from other supervisors. Mr. Nicholls testified that he did not leave that meeting with the impression that Ms. Barron would be fired. Nicholls Dep. 66-68. Ms. Barron missed her first day of work due to bronchitis on October 9, 2008; but it was not until October 14 that Ms. McNeill told him that she would be "moving forward" with Ms. Barron's termination. The Corrective Counseling Action terminating her was not prepared until October 21,

2008. Def.'s Ex. Tab. R. Mr. Nicholls stated that he did not realize until October 17 that Ms. Barron had not called before her absences on October 15 and 16, 2008; he did not testify that he was unaware Ms. Barron had been on sick leave starting on October 9, 2008. Nicholls Dep. 70-71. A reasonable fact-finder could assume that Mr. Nicholls, as Ms. Barron's direct supervisor, knew that she was out on sick leave beginning on October 9, 2008 and could have communicated this to Ms. McNeill at any time before October 14, 2008. The email from Ms. McNeill to Mr. Nicholls on October 14 refers to "moving to the next step in the corrective action chain for Maggie" and does not establish that Ms. Barron's absences were not a factor in her termination. Furthermore, Ms. Barron correctly notes that Mr. Nicholls', Ms. McNeill's, and Ms. Mill's declarations asserting that they recommended Ms. Barron's termination subject to approval from Ms. Mcghee are inconsistent with Ms. McNeill's testimony during Ms. Barron's unemployment compensation hearing that only she and Mr. Nicholls decided to terminate Ms. Barron. Unemployment Compensation Hearing Tr., 6.

    A reasonable fact finder could conclude that this timing was merely coincidental and that Ms. Barron's termination was imminent before October 9, 2008. However, a reasonable fact finder could also conclude that, because Ms. Barron's supervisors didnot take the final steps to fire her until she missed work due to illness, her exercise of FMLA rights was the motivating factor behind the ultimate decision to terminate her. Therefore, I will deny Quest's motion for summary judgment as to Ms. Barron's FMLA retaliation claim.

## IV. CONCLUSION

Because it is not for this Court to make the credibility assessments necessary to decide whether Quest fired Ms. Barron solely because of her history of lateness or because she used FMLA leave, I will deny Quest's motion for summary judgment as to Ms. Barron's retaliation claim. I will grant Quest's motion as to her FMLA claims for failure to notify and failure to reinstate. An appropriate order follows.